**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 16, 2012**

# In the Court of Appeals of Georgia

A12A1044. ALEXANDER v. THE STATE.                                    DO-040 C

DOYLE, Presiding Judge.

Jacquin Alexander appeals from the denial of his motion for new trial following his conviction by a jury of battery[1] (two counts), simple battery[2] (two counts), disorderly conduct,[3] and criminal trespass to property.[4] He contends that he received ineffective assistance of counsel based on his trial counsel's failure to (1) investigate his mental health, (2) adequately prepare him for testifying, (3) object to references to a prior protective order entered against him, and (4) object to leading

---

[1] OCGA § 16-5-23.1 (a).

[2] OCGA § 16-5-23 (a) (1).

[3] OCGA § 16-11-39 (a) (1).

[4] OCGA § 16-7-21 (a).

questions and narrative testimony by the victim. For the reasons that follow, we affirm.

Construed in favor of the verdict,[5] the evidence shows that Alexander had a tumultuous relationship with his girlfriend. After dating for a few months, the girlfriend decided to break up with Alexander. To end the relationship in person, the girlfriend requested that he pick her up from her workplace, which was two hours from his home in Clarke County. After the girlfriend informed Alexander of her decision, Alexander grew angry and took away her two cell phones so that she could not leave or contact anyone. Alexander pushed her onto a bed and physically restrained her for approximately an hour while she screamed and attempted to retrieve her phones. The girlfriend grew exhausted, and Alexander eventually slumped against the closed bedroom door, blocking the exit. Because Alexander was unresponsive, the girlfriend splashed some water in his face to awaken him, and Alexander quickly opened his eyes and replied "What the f— are you doing?" The girlfriend then ignored him, and the two eventually fell asleep.

The next day, Alexander awoke and returned one phone to the girlfriend, keeping the one she used to communicate with her family. Alexander went to work

[5] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

2

and the girlfriend waited for him to return so she could retrieve her second phone. Later that day, Alexander arranged to pick up the girlfriend in his car, and when he briefly went back inside his workplace to obtain his cell phone charger, the girlfriend looked through Alexander's text messages on his phone, a practice they each openly engaged in while they were dating. The girlfriend discovered a message confirming that Alexander had lied to her about his whereabouts on an earlier occasion, and she confronted him when he got back in the car. An argument ensued as Alexander drove, and after the girlfriend slapped Alexander's arm in anger, Alexander punched her in the face with his fist, scratching her eye, knocking out both contact lenses, and causing her nose to bleed profusely.

Alexander then drove at excessive speed to a subdivision, where he parked, and the two continued arguing. Alexander obtained the girlfriend's phones and refused to return them, smashing one to the ground, breaking it. After a subdivision resident approached them, they got back in the car and resumed driving. As Alexander drove, the girlfriend attempted to access her remaining phone in Alexander's front pants pocket. Alexander leaned forward to hinder her efforts and violently headbutted her with the back of his head, cutting her lip. The girlfriend retreated to her seat and waited to arrive back at Alexander's residence.

3

Upon arrival, Alexander initially refused to return her phone, but ultimately gave it back when the battery had expired. The girlfriend called a friend, who picked her up and took her to her residence, where they photographed her face and called the police.

Alexander was charged with battery (two counts), simple battery (three counts), disorderly conduct, and criminal trespass. He was found guilty by a jury of all but one simple battery count. Alexander moved for a new trial, arguing that he received ineffective assistance of counsel. Following a hearing, the trial court denied the motion, giving rise to this appeal.

Under *Strickland v. Washington*,[6] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[7] "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of

---

[6] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[7] See id. at 687-688, 694 (III) (A)-(B).

4

trial and under the circumstances of the case."[8] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[9] In reviewing the trial court's decision, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[10]

1. Alexander contends that his trial counsel performed deficiently by failing to properly investigate his mental health prior to trial. At the motion for new trial hearing, Alexander's mother testified that, as a child, he had received counseling for behavior problems, was diagnosed as clinically depressed, and had been prescribed anti-depressants. Trial counsel testified at the hearing that she was unaware of these issues and had not asked Alexander about his mental health because he stated that he had none on his intake form at the public defender's office. She stated that she came to believe he could have mental health issues when Alexander testified that he had

---

[8] (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[9] See *Strickland*, supra, 466 U. S. at 697 (IV); *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

[10] (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

passed out during times of mental stress, and that, during an argument, he had stabbed himself in the arm and sent his girlfriend a photo of his wound to demonstrate his affection for her.

Alexander argues on appeal that trial counsel should have discovered this evidence and used it at trial to provide context to his actions and at sentencing to mitigate his sentence. But this ignores the fact that Alexander never made this assertion to trial counsel, and he did not disclose it when asked about it in an intake interview.[11] Further, the alleged mental health problems would not have been relevant to his stated trial strategy of self defense. For example,

> [a] defendant is not permitted to support a justification defense with an explanation that he or she had been the victim of an earlier attack committed by an unknown person; such evidence is not relevant to the critical question of whether the circumstances surrounding the commission of the crimes on trial would have excited the fears of *an objective reasonable person to the point where the defendant's actions were justified*.[12]

---

[11] See *Tyner v. State*, 313 Ga. App. 557, 566 (6) (d) (722 SE2d 177) (2012) (finding no ineffective assistance because defendant did not disclose alleged mental health problem to trial counsel).

[12] (Emphasis supplied.) *Harris v. State*, 279 Ga. 304, 308 (3) (c) (612 SE2d 789) (2005).

Likewise, there was no evidence presented at the motion for new trial hearing that Alexander was impaired by a mental health condition at the time he battered his girlfriend.[13] Based on these facts, this ground fails to support his claim.

With respect to sentencing, the trial court heard the testimony by Alexander's mother that he historically had suffered from mental illness. There was no additional evidence proffered as to the effect of Alexander's mental health on his behavior as it related to the offenses for which he was tried. In the absence of evidence as to whether or how Alexander's mental condition caused or exacerbated his behavior in this case, Alexander has not established that a reasonable probability existed that his sentence would have been more lenient if his mental health history had been offered at sentencing.[14] Accordingly, Alexander has failed to meet his burden under *Strickland*.

---

[13] See *Baker v. State*, 259 Ga. App. 433, 437 (3) (d) (577 SE2d 282) (2003), disapproved of on other grounds by *Schofield v. Holsey*, 281 Ga. 809, 812, n.1 (642 SE2d 56) (2007).

[14] See *Hernandez v. State*, 303 Ga. App. 103, 106 (2) (692 SE2d 712) (2010) ("Mere speculation will not support a claim of ineffective assistance of counsel."); *Whited v. State*, 258 Ga. App. 195, 200 (7) (573 SE2d 449) (2002), overruled on other grounds by *Schofield*, 281 Ga. at 812, n. 1.

2. Alexander next contends that his trial counsel failed to adequately prepare him for testifying, so his testimony and demeanor on cross-examination damaged his credibility. At the motion for new trial hearing, trial counsel testified that she intended to pursue a strategy of self defense and that she expected to be able to elicit sufficient testimony to support her theory, so she did not plan to call Alexander as a witness. After the State rested at trial, however, trial counsel did not feel confident that the evidence would support a jury instruction on self defense, so at a lunch break, she discussed with Alexander the option of calling him as a witness, including weighing the costs and benefits of his testimony. At the conclusion of the break, Alexander elected to testify to support his self-defense theory.

On appeal, Alexander argues that his trial counsel inadequately prepared him to testify because he acted defensive on the stand, answered questions with questions, claimed he had other witnesses he could call to support him, and referred to a protective order against him. But it is clear that trial counsel's actions were done in furtherance of her reasonable trial strategy of establishing a self-defense theory. After the State rested, trial counsel made a mid-trial calculated risk to reinforce the self-defense theory with Alexander's testimony, so she could ensure that the trial court would grant a request for a jury instruction on justification. Although trial counsel

8

might have pursued a different course in hindsight, we view "the effectiveness of trial counsel's performance from counsel's perspective at the time of trial,"[15] and Alexander's claim "is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight."[16] The constitutional guarantee of effective legal assistance means that "[a] defendant is entitled to a fair trial but not a perfect one, for there are no perfect trials."[17]

Based on trial counsel's reasonable self-defense strategy, trial counsel reconsidered the risk of not letting Alexander testify and prepared him to testify in light of the developments at trial. The fact that Alexander's demeanor and responses to the State's cross-examination may have been less than optimal does not render his trial counsel's representation constitutionally deficient.

3. Alexander next contends that his trial counsel performed deficiently by failing to object to a witness's mention of a protective order, which the girlfriend had

---

[15] (Punctuation omitted.) *Coats v. State*, 303 Ga. App. 818, 822 (3) (695 SE2d 285) (2010).

[16] (Punctuation omitted.) *Rouse v. State*, 290 Ga. App. 740, 742 (1) (660 SE2d 476) (2008).

[17] (Punctuation omitted.) *Sutton v. State*, 238 Ga. 336, 338 (232 SE2d 569) (1977).

obtained after Alexander continued to contact her following the offenses. The first reference occurred in the following colloquy during his trial counsel's cross-examination of the victim:

Q: [Alexander] had attempted to contact you after this incident, right?

A: Right. After April the 10th.

Q: Okay. And at any point did you tell him not to contact you?

A: No, I – I refused to respond to anything.

Q: Okay. But you didn't explicitly say stop contacting me?

A: No, I didn't but from how I left the scene on April 10th, from his house, it was really implied that I did not want to be around him at all whatsoever.

Q: Okay. And then after April 27th, Mr. Alexander has not – or he stopped trying to contact you?

A: When the TPO was filed. I can't remember the exact date, if that was the exact date or not.

Q: So that would have been the first time Mr. Alexander got notice he should not be contacting you?

A: Yes.

Brief references to the "TPO" were made twice more during trial.

As demonstrated by the colloquy above, trial counsel elicited the first reference to the protective order during a line of questioning showing that the girlfriend had never asked Alexander to stop contacting her and that he ultimately did stop contacting her altogether. This questioning reflects a reasonable trial strategy of attempting to show that the girlfriend did not explicitly end the relationship and that Alexander ultimately did respect her wishes to cease contact. That trial counsel might regret this line of questioning after the fact does not demonstrate deficient performance because the inquiry in an ineffective assistance claim "focuses on the reasonableness of counsel's conduct from counsel's perspective at the time of trial. Thus, the courts will not second-guess counsel's decisions concerning matters of trial strategy and tactics."[18]

Further, the protective order is indicative of a subsequent difficulty between the victim and Alexander. This Court has held that "[a] subsequent difficulty between a defendant and the victim is admissible as evidence of the relationship between the

[18] (Punctuation omitted.) *Smith v. State*, 261 Ga. App. 25, 27 (3) (581 SE2d 673) (2003).

11

two, and may show the defendant's motive, intent, and bent of mind in committing the alleged crime against the victim."[19] Thus, it was not unreasonable for trial counsel to avoid an objection to the testimony and run the risk of drawing further attention to it in a way that would not serve her purpose. Accordingly, this ground fails as a basis for Alexander's claim.

4. Finally, Alexander argues that his trial counsel should have objected to the victim's testimony on the ground that it was provided in long, narrative answers, sometimes in response to leading questions from the State. The record reveals, however, that the testimony in this case was not provided on a strictly narrative basis; instead, the victim answered the State's questions – primarily open-ended questions such as "What happened after that?" and "What happened next?" – and did not stray into irrelevant information. We find no basis for an objection to the testimony in this

---

[19] *Reed v. State*, 309 Ga. App. 183, 188 (2) (709 SE2d 847) (2011) (noting that no notice and pre-trial hearing is required for the introduction of subsequent difficulty evidence). To the extent that Alexander argues that trial counsel was ineffective by failing to request a jury charge limiting the jury's consideration of the testimony, we find no cause for reversal in this case. See *Freeman v. State*, 269 Ga. App. 435, 438 (1) (604 SE2d 280) (2004) ("[W]hen evidence of subsequent difficulties is admitted, the trial court is not required to give a limiting charge in the absence of a request for such a charge.").

case, and Alexander does not cite any case demonstrating an abuse of discretion by the admission of such testimony over an objection.[20]

Further, we note that our courts have approved of true narrative testimony, particularly in cases involving youthful victims of sex or violent crimes: "It is not error to allow a witness to deliver his testimony in narrative form, without the aid of questions from counsel, when counsel so request, provided the witness is not permitted to state anything which is inadmissible as evidence. This practice is rather to be commended than condemned."[21] Accordingly, because the failure to make a meritless objection will not provide support for finding trial counsel ineffective, this enumeration is without merit.[22]

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[20] See, e.g., *Anglin v. State*, 173 Ga. App. 648, 651 (3) (327 SE2d 776) (1985) ("The court may, in the exercise of its discretion, permit a party calling a witness to propound leading questions. A judge is given latitude and discretion in permitting leading questions, and unless there has been an abuse thereof, resulting in prejudice and injury, there is no reversible error.") (punctuation omitted).

[21] (Punctuation omitted.) *Burroughs v. State*, 186 Ga. App. 40, 44 (7) (366 SE2d 378) (1988), quoting *Horton v. State*, 123 Ga. 145 (1) (51 SE 287) (1905).

[22] See *Wesley v. State*, 286 Ga. 355, 357 (3) (e) (689 SE2d 280) (2010).