**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 13, 2015**

# In the Court of Appeals of Georgia

A15A0634. HARRIS v. THE STATE.

MCFADDEN, Judge.

Andre Harris appeals from his convictions of child molestation and enticing a child for indecent purposes. He challenges the sufficiency of the evidence, the allowance of certain rebuttal testimony, a jury charge on the asportation element of enticing a child for indecent purposes, and the effectiveness of his trial counsel. However, there was sufficient evidence to support the jury's verdict, Harris opened the door to the rebuttal testimony, the court correctly charged the jury on asportation, and Harris has failed to show that his counsel's performance was both deficient and prejudicial. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence "is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This [c]ourt does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013) (citations omitted).

So viewed, the evidence shows that Harris is the biological father of K. H. In August, 2010, when K. H. was 11 years old, she moved from her mother's home in Spalding County to Harris' home in Clayton County, where he lived with his wife and their two minor children. Unbeknownst to K. H.'s mother, at that time, Harris had child molestation charges pending against him, arising from an incident in 2009 involving a nine-year-old girl. In March 2011, while K. H. was still living with him, Harris pled guilty to two counts of child molestation. As a registered sex offender, he could no longer live in the same house because it was near a school. So in September 2011, Harris moved his family, including then 12-year-old K. H., to another house in Clayton County.

Shortly after the move to the new house, Harris began entering K. H.'s bedroom in early morning hours once or twice a week. Harris would awaken K. H. and tell her to come with him to massage his back. Harris would then take his daughter to another room in the house, usually his music studio. Harris would lie face-down on the floor and instruct K. H. to sit on his back and massage it with her buttocks by moving in a circular motion. He would then turn over, lie on his back, and instruct her do the same thing while sitting on his crotch area, having her massage his genitals with her buttocks by moving her hips in a circular motion. After approximately 20 minutes, Harris would tell her "good job" and allow her to return to her bedroom. He also instructed his daughter not to tell others about the incidents.

In December 2011, K. H. moved back to live with her mother. In April 2012, she went to visit Harris and his family during spring break. On that occasion, while the rest of the family was at church, Harris called K. H. into his bedroom where he again had her sit on him and move her buttocks in a circular motion. K. H. could feel that his penis was hard and that it moved as she rotated her buttocks. Harris apparently ejaculated on K. H.'s clothed buttocks as she subsequently discovered what she described as a white gooey substance on the back of her shorts.

Harris testified on his own behalf, denying that the molestation of K. H. had occurred and claiming that the prior acts of molestation of the nine-year-old girl had been an isolated incident and that he had never done anything like that before. On rebuttal, the state introduced testimony from the aunt of that nine-year-old victim. She testified that on several occasions when she was 14 years old, Harris had taken her to a hotel room and had sex with her.

a. *Child molestation.*

Although Harris has not raised any argument concerning the sufficiency of the evidence supporting his child molestation conviction, we have reviewed the evidence and conclude that there was sufficient evidence from which the jury was authorized to find Harris guilty beyond a reasonable doubt of child molestation. See OCGA § 16-6-4 (a) (1) (child molestation committed when person does any immoral or indecent act to a child under the age of 16 years with the intent to arouse or satisfy the sexual desires of the child or the person); *Madison v. State*, 329 Ga. App. 856, 863 (1) (a) (766 SE2d 206) (2014).

b. *Enticing a child for indecent purposes.*

"A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place

4

whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a). This offense "has been held to include the element of asportation, and our Supreme Court has held that this element is satisfied whether the taking involves physical force, enticement, or persuasion. Further, any asportation, however slight, is sufficient to show the taking element of enticing a child for indecent purposes." *Whorton v. State*, 318 Ga. App. 885, 887 (1) (a) (735 SE2d 7) (2012) (citations and punctuation omitted). Here, the indictment charged that between September 1, 2011 and April 30, 2012, Harris "did unlawfully solicit, entice and take [K. H.], a child under the age of sixteen years, to Rex, [Clayton County, Georgia,] for the purpose of child molestation."

Harris argues that the evidence was insufficient to support the guilty verdict on this charge because he was not involved in the initial decision to move K. H. to his house in Clayton County, and instead that decision was made only by the child's mother and grandmother. Thus, Harris reasons, there is no evidence that he initially enticed the child to his house. However, Harris has overlooked his own testimony that he was in fact involved in the initial decision to move K. H. to his house. He testified at trial that K. H. came to live with him in 2010 after he and the child's mother had a conversation about the mother's unstable living condition and they "came to the

5

conclusion that it would be best for [K. H.] to come live with [Harris.]" Thus, contrary to Harris' argument, his own testimony provides evidence that he was in fact involved in the decision to move the child to his house.

Moreover, not only is the argument based on an incorrect factual premise, but it is also based on a misreading of the enticement offense alleged in the indictment. Contrary to Harris' argument, the indicted enticement charge was not based on the victim's initial move to the first house in Clayton County where Harris and his family were living in 2010. Rather, it is clear from the plain language of the indictment, as well as the evidence introduced at trial, that the enticement offense as charged actually took place at the second house that Harris moved his family to in September 2011, after he had pled guilty to the prior child molestation charges and had become a registered sex offender. Having reviewed the evidence in the light most favorable to the verdict, we conclude that "the evidence was sufficient for a rational trier of fact to find [Harris] guilty of [the indicted offense of] enticing a child for indecent purposes beyond a reasonable doubt." *Hicks v. State*, 254 Ga. App. 814, 816 (3) (563 SE2d 897) (2002) (punctuation omitted).

Harris also argues that the state failed to prove venue in Clayton County for the enticement offense. He claims that K. H. was first told in Spalding County, where she

6

had lived with her mother, that she would be moving to Harris' home in Clayton County, and therefore venue for the crime of enticement would be in Spalding County. However, Harris has not cited any evidence showing that the child was first told of the move in Spalding County. Moreover, the argument is based on the same misreading of both the indicted enticement offense and the evidence presented at trial. As noted above, Harris was not charged with committing any enticement offense at his first house in Clayton County where K. H. initially moved to in 2010; rather, he was charged with enticing the child for indecent purposes at the second house between September 2011 and April 2012, and the evidence presented at trial supported that charge. Contrary to Harris' argument, the uncontradicted evidence, including his own testimony, "was sufficient to establish venue in [Clayton] County. [Cit.]" *Lowther v. State*, 263 Ga. App. 282, 283 (2) (587 SE2d 335) (2003).

2. *Rebuttal witness.*

Harris contends that the trial court erred in allowing the rebuttal witness to testify about Harris having had sexual relations with her when she was 14 years old. However, Harris opened the door to such testimony with his own testimony. While testifying on direct about his prior guilty plea to two counts of child molestation,

7

Harris claimed that he had accepted responsibility for that lone incident and that he had "never done nothing like that" either before or since that incident.

"A witness may be impeached by disproving the facts testified to by the witness." OCGA § 24-6-621. Here, the state was properly allowed to impeach Harris by calling the rebuttal witness to give testimony disproving Harris' testimony by showing that he had in fact engaged in improper sexual contact with another minor girl prior to the child molestation incident to which he pled guilty. "[W]hether the [s]tate should be permitted to introduce evidence after the defendant has closed his testimony . . . is a matter resting in the sound discretion of the court. And given that the rebuttal evidence contradicted [Harris'] testimony, [Harris] has not shown that its admission [was a] . . . breach of that discretion." *Brown v. State*, 300 Ga. App. 359, 365 (6) (d), n. 2 (685 SE2d 377) (2009) (citations and punctuation omitted).

3. *Jury charge.*

Harris enumerates as error the charge given on the asportation element of enticing a child for indecent purposes. But as he did not object to this charge at trial, his burden is to show plain error. Consequently,

> review by this [c]ourt is precluded pursuant to OCGA § 17-8-58 unless
> plain error is shown. Plain error requires a clear or obvious legal error
> or defect not affirmatively waived by the appellant that must have

8

affected the appellant's substantial rights, i.e., it affected the outcome of the trial-court proceedings. Stated more succinctly, the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings.

*Guthridge v. State*, ___ Ga. ___ (1) (Case No. S15A0589, decided May 11, 2015) (citations and footnote omitted). Here, there was no clear or obvious legal error because there was no error.

The asportation charge at issue was,

As to this offense, the state is required to prove the element of asportation, which means causing a person to move from one place to another. Any asportation, no matter how slight, would be sufficient to show the taking element of the crime of enticing a child for indecent purposes. And the asportation element of the offense is satisfied when the takIng involves a physical force, enticement or persuasion.

That charge was a correct statement of the law as to an element of a crime at issue in the case. See *Whorton v. State*, supra (offense of enticing a child includes the element of asportation; this element is satisfied whether the taking involves physical force, enticement, or persuasion; and any asportation, however slight, is sufficient to show the taking element of enticing a child). Moreover, Harris has made no showing that this proper statement of the law somehow improperly affected the outcome of the trial. Thus, Harris "has failed to demonstrate error, much less plain error, in the jury

9

instructions he now disputes." *Woodard v. State*, 296 Ga. 803, 807 (2) (___ SE2d ___) (2015).

4. *Ineffective assistance of counsel.*

In order to succeed on his ineffective assistance of counsel claim, Harris must show, under the standard set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), "both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. . . . If [he] fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong." *Perez v. State*, 331 Ga. App. 164, 168 (3) (770 SE2d 260) (2015).

a. *Failure to advise defendant about testifying.*

Harris claims that his trial counsel was ineffective in failing to properly advise him before he testified and that such deficient performance opened the door to the rebuttal testimony discussed above in Division 2. However, at the motion for new trial hearing, counsel explained that they talked in depth several times about whether Harris should testify, that Harris made the decision to testify after consulting with counsel, that counsel repeatedly advised Harris to answer only the questions asked and instructed him to "not volunteer other information about anything else." Despite

10

counsel's advice, Harris gave a non-responsive answer during his testimony that opened the door to the rebuttal testimony. Thus, it was Harris' disregard of counsel's advice to answer only the questions asked and not volunteer other information that opened the door to the rebuttal testimony. The fact that Harris' "responses to [questions] may have been less than optimal does not render his trial counsel's representation constitutionally deficient." *Alexander v. State*, 319 Ga. App. 199, 203 (2) (743 SE2d 432) (2012).

b. *Failure to obtain victim's school records.*

Harris claims that his trial counsel was ineffective in failing to obtain K. H.'s school records, which would have impeached the testimony of the child's mother about her poor performance at school while living with Harris. However, Harris himself also testified that K. H. was "coming home with Fs" on her report card when she lived with him. Moreover, we have reviewed the mother's testimony and are unable to discern precisely what testimony Harris now claims his counsel should have rebutted. As the trial court found in denying a new trial, "it is highly unlikely that [evidence of the school records] would have changed the outcome of the case in light of all the other evidence." Consequently, even assuming for the sake of argument that counsel was deficient in not investigating the school records, Harris has made no

11

showing of prejudice from counsel's failure to obtain such records. See *Wright v. State*, 296 Ga. 276, 285 (4) (766 SE2d 439) (2014) (no showing of prejudice in failure to obtain certain school records).

c. *Failure to object to jury charge on asportation.*

Harris complains that trial counsel was ineffective in failing to object to the trial court's jury instruction on the asportation element of enticing a child for indecent purposes. But as explained above, the charge was a correct statement of the law and not improper. "Counsel cannot be ineffective for failing to make a meritless objection to a proper charge. [Cit.]" *Vergara v. State*, 287 Ga. 194, 198 (3) (b) (695 SE2d 215) (2010).

d. *Failure to object to cross-examination.*

Harris claims that trial counsel was ineffective in failing to object when the prosecutor asked him irrelevant questions on cross-examination about his marital relations. "Pretermitting whether trial counsel was deficient for failing to object to the prosecutor's questions, we conclude that [Harris] has failed to show a reasonable probability that the outcome of the trial would have been different but for his counsel's alleged deficiency. [Cit.]" *Gipson v. State*, ___ Ga. App. ___ (8) (h) (Case No. A15A0155, decided May 6, 2015).

12

*Judgment affirmed. Ellington, P. J., and Dillard, J., concur.*