**SECOND DIVISION
BARNES, P. J.,
BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 15, 2016**

# In the Court of Appeals of Georgia

A16A0408. PITT v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Edward Pitt of two counts of child molestation and one count of aggravated child molestation, and the trial court sentenced him to 35 years to serve, followed by life on probation. Following the denial of his motion for new trial, Pitt appeals, contending that he was absent during a critical phase of his trial in violation of his constitutional rights to due process and a fair trial and is therefore entitled to a new trial. For the reasons that follow, we affirm.

Pitt was indicted for aggravated child molestation for placing his mouth on the sex organ of the underage victim, for child molestation for rubbing his penis on the victim's vaginal area, and for child molestation for touching the victim with his hand on her inner thigh, buttocks, and vaginal area.[1] Pitt had dated the victim's mother and lived for a time with the victim, her mother, and her brother. The victim, who was 11

---

[1]Pitt was acquitted of a second count of aggravated child molestation.

as of trial, testified that when she was 8 or 9, Pitt had called her into her mother's bedroom, placed his hands and mouth on her "private area," pushed his private area into hers, and would not let her leave the room until she said aloud that nothing had happened between them. The victim testified that these incidents happened between 10 to 15 times, and she did not tell her mother about them because she was scared Pitt would hurt her or her mother. After Pitt moved out, the victim said, she had "done her best to forget everything about him," but then heard his name during a conversation and made an outcry.

During the victim's subsequent therapy sessions, she mentioned a conversation she had had with another girl whose mother had also previously dated Pitt, and that other girl became a similar transaction witness in this case.[2] That witness testified that when she was 9 or 10, Pitt followed her into her bedroom when she went to change clothes and said he would take her for ice cream if she showed him her private parts. He flashed his penis at her, and she flashed back "really quick so he would get out of [her] room." Then she changed clothes and they went for ice cream.

---

[2]This case was tried in 2012, before the effective date of the new evidence code.

While Pitt does not challenge the sufficiency of the evidence against him, our review of the record establishes that the evidence presented to the jury was sufficient for a rational jury to determine that Pitt was guilty beyond a reasonable doubt of the offenses for which he was convicted. See *Harris v. State*, 333 Ga. App. 118, 119 (1) (a) (775 SE2d 602) (2015).

Pitt contends that he was denied his Georgia constitutional right to be present during all critical stages of his trial because he was absent during what he characterizes as the trial court's "demand for an offer of proof as to the relevance of certain defense evidence."

"Within the Georgia constitutional right to the courts[3] is a criminal defendant's right to be *present*, and see and hear, *all the proceedings* which are had against him on the trial before the Court." (Citations and punctuation omitted.) *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998).

> The right to be present attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure. This Court has determined that a critical stage in a criminal prosecution is one in which a

---

[3]Art. I, Sec. I, Par. XII of the Georgia Constitution provides: "No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state."

3

defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way.

(Citation and punctuation omitted.) *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001).

While denial of the corresponding federal constitutional right to be present is subject to harmless error review on appeal, a denial of the right to be present guaranteed by the Georgia Constitution is presumed to be prejudicial unless the defendant waived his right or later acquiesced to proceedings conducted in his absence. *Peterson v. State*, 284 Ga. 275, 278-279 (663 SE2d 164) (2008); *Holsey v. State*, 271 Ga. 856, 860-861 (5) (524 SE2d 473) (1999).

The six-day trial in this case began on a Monday. The State introduced 12 witnesses, including the victim, her mother, the similar transaction witness and her mother, two inmates who testified regarding disclosures Pitt made to them, law enforcement personnel, and experts in the area of child molestation, most of whom had interacted directly with the victim. The State completed its presentation of evidence at the end of the day on Wednesday and rested before the jury Thursday morning.

The defense then called a former cell mate of Pitt's, who testified that in jail, no one would have admitted to having child molestation charges against him. The next witness was a probation officer who had been overseeing Pitt's probation after he pled guilty to a domestic violence misdemeanor against the victim's mother. The defense then recalled the victim's forensic interviewer for cross-examination and played a DVD recording of the entire interview with the victim. The plan was to play the interviews with the victim and the similar transaction witness back-to-back, to highlight discrepancies, but technical difficulties arose with the courtroom's speaker system and the audio dropped out several times while the defense played the recording of the victim's interview. The parties unsuccessfully attempted to fix the audio problem during the lunch break, and the State provided the defense with a copy of a transcript of the interview.

After lunch, Pitt cross-examined the interviewer to fill in the gaps where the audio of the victim's forensic interview had dropped out. Pitt then played the similar transaction witness's forensic interview, which was easier to follow despite the continued audio problems because the State had provided copies of that transcript for the jurors in addition to the defense.

Over objection, Pitt then began to play a DVD recording of the State's interview with the first of the two inmates who testified against Pitt, which Pitt had successfully tendered into evidence the previous day during the interrogating detective's testimony. The sound still was not working properly, and the recording was paused while the parties tried a different hardware configuration, but the problem continued and the recording was paused again. Hoping to resolve the technical difficulties that evening after the jury was excused, Pitt shuffled his planned order of witnesses so he could continue presenting his case. A records custodian from the jail identified visitor sign-in sheets and a log book in which deputies recorded daily activities in the jail section where Pitt had been housed, although she could not explain what the entries meant; another witness identified CDs containing recorded telephone calls from the two inmates who testified against Pitt. The Cherokee County Humane Society director testified about Pitt's community service during his probation, and a paralegal working for Pitt's attorney testified that she had delivered a large volume of discovery material to Pitt shortly before the other two inmates offered to testify against Pitt.

The paralegal finished her testimony around 5:00 p.m., and Pitt's next witness, a deputy sheriff, was not available to testify. After an unreported bench conference,

the trial court excused the jurors for the evening, directing them to return the next morning, Friday, at 8:00 a.m. Apparently at this point Pitt left the courtroom. After he left, one of his two attorneys stated that Pitt would probably want to address the court in the morning regarding his frustration over the trial's progress and his dissatisfaction with his trial counsel. After noting that the jury would return at 8:00 a.m. ready to hear more evidence, the trial court directed Pitt's second attorney to go talk to Pitt while the first attorney attempted to resolve the ongoing technical difficulties. Apparently the second attorney then left the courtroom to talk to Pitt while the trial court, the first attorney, and the prosecutor remained in the courtroom.

The subsequent exchange forms the basis for Pitt's claim of constitutional error. After noting that Pitt had announced he had eleven witnesses and six of them had been heard, the trial court asked Pitt's attorney how many other witnesses he planned to call. The attorney listed his remaining witnesses, including Pitt himself, and then sought permission to call as an additional witness "an officer on [jail] procedure to explain the jail records." The court asked, "What's the relevance? Make an offer of proof on these records."

Pitt's attorney explained that he had mistakenly thought the records custodian who had identified the logbook pages as business records would be able to explain

the entries in them, but because she had been unable to do so, the attorney wanted to call a deputy who had worked inside that portion of the jail. The attorney explained that his strategy was to show through the logbook entries that the two jail "snitches" could have gone into Pitt's cell and looked at his discovery material, which included descriptions of the crime. Having learned key details of the allegations, the snitches then could have tailored stories about what Pitt said to them to match the crimes for which he was charged, hoping to get lighter sentences in exchange for their testimony.

The trial court asked for the State's response to the defense request to call this previously-unidentified witness, and the State responded that the parties could probably draw up a stipulation regarding the logbook entries. The court concluded that the parties should talk about a possible stipulation and made no ruling on the issue. The court then asked if there were any evidentiary issues that could be resolved that evening, and the attorneys discussed the admission of the snitches' recorded telephone conversations. The court noted that the defendant was absent from the courtroom but that they could put a final resolution of that issue on the record the next morning.

Pitt then returned to the courtroom with his second attorney, and the prosecutor left. Pitt's counsel noted that the issue of Pitt's satisfaction with counsel had been heard several months earlier and also addressed when the trial began. Pitt took the stand, and prompted by his attorney's questions, he addressed various concerns he had with the presentation of evidence, including the decision that had been left to him to play the recorded interviews with the victim and the similar transaction witness back-to-back to show discrepancies between them. The exchange among Pitt, his attorney, and the trial court covers 60 pages of transcript, ending at 6:30 p.m. The trial court noted that Pitt had perfected his complaints for the record and encouraged him to continue communicating with his attorneys. The prosecutor then returned to the courtroom and agreed to Pitt's request to be allowed to call a newly-identified witness to testify regarding the jail logbook entries rather than attempt to draft a stipulation.

Whether Pitt could call a new witness at all was the issue addressed while Pitt was absent from the courtroom earlier that evening. When defense counsel brought it up, the court asked the attorney to make a proffer, then sought the prosecutor's response, then concluded the parties should discuss the issue and did not issue a

ruling then. After Pitt returned to the courtroom, the prosecutor agreed to the request to call the new witness, so the trial court was never required to rule on it.

The short portion of the trial in which Pitt was absent was not a critical phase of the proceedings. The only issue discussed was a procedural question about a witness that the court never had to resolve because it was resolved by the parties once Pitt was present in the courtroom, and thus the brief discussion was not a portion of the proceeding where Pitt had an unequivocal right to be present. See *Huff*, 274 Ga. at 111-112 (2) (a criminal defendant has no unequivocal right to be present during charge conference during which only legal matters were discussed, substance of which was placed on record in defendant's presence). Further, "[g]iven that [Pitt] could not have made a meaningful contribution to the discussions about [calling the new witness], his right to be present was not violated by his absence from those discussions." *Tolbert v. State*, 321 Ga. App. 637, 639 (2) (742 SE2d 152) (2013).

Accordingly, the trial court did not err in denying Pitt's motion for new trial.

*Judgment affirmed. Boggs and Rickman, JJ., concur.*