A10A0456. O'NEAL v. THE STATE.
(696 SE2d 490)

BARNES, Presiding Judge.

A jury convicted William O'Neal of two counts of child molestation, and the trial court sentenced him to a total of seven years' imprisonment followed by twenty-three years on probation. He appeals, contending his trial counsel was ineffective for failing to call an expert witness and failing to object to improper bolstering testimony. He also contends the trial court erred in ruling the State could compel his wife to testify, and in sentencing him to more than two years' supervised probation. For the reasons that follow, we affirm.

O'Neal was indicted on four counts of child molestation and two counts of cruelty to children, involving his two stepdaughters. Five of the counts alleged that the offenses occurred between March 8, 2003 and March 13, 2004, and one count alleged the offense occurred between January 1, 2004 and March 11, 2004. O'Neal filed a special demurrer seeking to quash the indictment, arguing that the State could establish a more certain time frame for the offenses charged and that he was entitled to an indictment perfect in form and substance. Following a hearing, the trial court denied the motion as to four of the counts and granted it as to two counts, leaving three counts of child molestation involving one child and one count of child

molestation involving a second child for the jury to consider. The jury found O'Neal not guilty on two counts and guilty on Counts 1 and 3, both involving the same victim. In the two counts on which O'Neal was convicted, the State had alleged that O'Neal committed child molestation by touching the victim's vagina and buttocks with the intent to arouse his sexual desires.

Following a criminal conviction, we construe the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent. *Johnson v. State*, 289 Ga. App. 206 (656 SE2d 861) (2008). So viewed, the evidence showed that the victim's sister told a friend's mother during lunch at school one day that she wanted nothing to do with O'Neal, her stepfather, that she hated him, and that he "used to touch me in a funny way and it did not feel right at all." When the friend's mother asked the child what she meant, she said O'Neal would come into her room, put his hand under her clothing, and touch her privates. She said she had talked to her older sister about it and they decided not to tell anyone because "they didn't want to ruin their mom's happiness." The friend's mother reported the conversation to the school counselor, who called a detective with the Cobb County Crimes Against Children Unit (CACU).

Several days later, the detective came to the girls' school and talked first to the child, who was seven at the time, who had spoken to the friend's mother. The detective made an audiotape of this interview, which the jury heard, and testified that the child said O'Neal had touched her inappropriately on her buttocks, but nowhere else. The child's sister, who was then nine, also "made a disclosure of being touched" to the detective, although that interview was not recorded. The detective ended the conversation and took the two girls to Safepath, which is a nonprofit federally funded social agency that works with CACU to provide a child-friendly environment to investigate child abuse cases.

At Safepath, the girls were interviewed and videotaped separately, and those tapes were played for the jury. The younger child said during the interview that O'Neal touched her on her privates and bottom, and the indictment regarding this child alleged O'Neal committed child molestation by touching the child on her bottom. When the child testified at trial, however, she denied O'Neal had touched her bottom and said instead that he had put his finger in her "privates" two times. O'Neal was acquitted of the single count involving this child.

The older child testified that she would sit on the bathroom counter after her shower every evening and O'Neal would put ointment on her genitals and buttocks, which were sometimes red and irritated. After the second or third encounter, O'Neal told her

not to tell her mother because these incidents were just between the two of them. The victim said that, after spanking her hard for lying about leaving a door open, O'Neal threatened her with "twenty more" spankings if she ever told anyone about these encounters.

The niece of O'Neal's former wife testified regarding a similar transaction during a family outing at a lake 17 years earlier, when she was 11. The niece said O'Neal took her into the water away from the other family members where it was too deep for her to stand and wrapped her legs around him so that she could feel he was aroused. She kept trying to move away, but he kept repositioning her on his erection until she finally broke free. O'Neal then climbed into her bed two nights later and fondled her until she got up and went into the bathroom to hide. When she finally came out of the bathroom, she said, O'Neal was leaning against the wall nearby and asked her if she wanted to come into the living room with him. She said no, returned to her bed, and never told anyone what had happened because she thought her father would kill O'Neal if he knew.

A detective testified that O'Neal came to the CACU with his wife, the children's mother, to pick them up after they were interviewed, and consented to talk to the detective about the children's claims. At first, O'Neal denied ever touching the victim's genitals or buttocks, but eventually admitted he had once put medicine on the victim's buttocks and the outer lips of her vagina to treat redness and irritation. He also admitted he had examined her genitals after she had dried herself too hard after a bath and showed him her vagina was red.

1. Under the foregoing evidence, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of Counts 1 and 3 of the indictment charging him with child molestation for touching the victim's vagina and buttocks with the intent to arouse and satisfy his sexual desires. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *King v. State*, 265 Ga. 440 (1) (458 SE2d 98) (1995).

2. O'Neal contends that he was denied effective assistance of counsel because his trial attorney failed to call at trial an expert witness who had been retained and was prepared to testify that the State had used improper interview techniques in this case. He also alleges that his attorney failed to object to testimony that bolstered the children's accusations. To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the inadequate performance prejudiced the defense. *Harris v. State*, 268 Ga. 412 (490 SE2d 96) (1997), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The defendant must overcome the strong presumption that counsel's conduct fell within the broad range of

professional conduct and demonstrate that the outcome of the proceedings would have been different were it not for counsel's deficiencies. Id. at 412-413. We will affirm a trial court's determination that a defendant was not denied effective assistance of counsel unless that determination is clearly erroneous. *Herndon v. State*, 235 Ga. App. 258, 259 (509 SE2d 142) (1998).

(a) O'Neal contends his trial counsel was ineffective for failing to call as a witness a retained expert in forensic interviews and evaluating child sexual abuse cases. The expert testified at length at the new trial hearing about her review of the evidence in this case, including the recorded interviews with the children, which she thought were unreasonably suggestive and conducted improperly. She had discussed with trial counsel her "serious concerns" with the interviewing techniques used with the two girls in this case, and was under subpoena and prepared to testify, but was never called. When asked if she ever said anything to trial counsel to give him the impression she was changing her opinion about problems with the interview techniques, she responded, "Not about the interviewing techniques." When asked if she had ever intimated that her testimony concerning the interview techniques would not be favorable to the defense, she responded:

> Well, it depends on what you mean by not favorable for the defense. An interview — in looking at all the data, everything that I'm provided in a case, I will always tell an attorney these are things that support the allegations, these are the things that don't support it. So there possibly would be asked questions that might not support his questioning.

Upon further questioning, the expert said, "What supported the State in the case is that [the victim] indicated that she had — that her stepfather had noted that she had a reddened vaginal area . . . and that her stepdad had put Neosporin on his finger and she described how he applied the Neosporin to her." She also remembered that trial counsel had discussed with her the possibility that certain evidence might or might not be presented which could affect her testifying, and that she might have mentioned that she had an important annual family trip planned that she "really want[ed] to go on," but did not recall saying she would not be available to testify.

Trial counsel testified at the hearing that he had been practicing law for 38 years and that most of his practice was criminal defense work. He said the retained expert had discussed with him her concerns about the interview techniques used by the detective in this

case, but that in their last few conversations

> it seemed like she had some vacation trip planned to California or something, and she started backing up on what she had told me before that she could testify to. Seemed like what she was saying then was not quite the same thing that was helpful. And I got the idea she just didn't want to be a witness and probably would not make a good one with it like that.

After conferring with O'Neal, trial counsel said they decided together not to call the witness, which was a strategic move, although he could not remember more specifically what the expert said that made him decide not to call her. While he normally would have put a note in his file regarding such an issue, he could not find one upon review.

O'Neal testified that until the State rested its case at trial, he thought his expert was going to testify, but that his trial counsel said at that point that he did not know if she would be available and did not want to call her. According to O'Neal, they had "some disagreement" about that, but according to O'Neal his lawyer said they did not need the expert and could call her at sentencing if they needed her then.

After this hearing, the trial court set another hearing for further oral argument and evidence specifically to address the court's "outstanding questions" regarding trial counsel's decision not to call the defense expert. Trial counsel and the defense expert testified again, essentially as they did during the first hearing. In its order denying O'Neal's motion for new trial, the trial court reviewed the evidence presented at the motions hearings and concluded that trial counsel provided "a logical and strategic basis" for not calling the defense expert as a witness during the trial. The court concluded that it could not "say that trial counsel's decision not to call . . . [the] expert witness was deficient or so patently unreasonable that no competent attorney would have done the same."

Under these circumstances, trial counsel's decision not to call the expert was "within the realm of trial tactics and strategy and provides no basis for a claim of ineffective assistance of counsel. [Cit.]" *Pippins v. State*, 263 Ga. App. 453, 458 (4) (a) (588 SE2d 278) (2003).

(b) O'Neal contends his trial counsel was also ineffective for failing to object to testimony by the State's expert that he contends improperly bolstered the victim's testimony. "In Georgia, the credibility of a witness is to be determined by the jury, and the credibility of a victim may not be bolstered by the testimony of another witness.

Thus, a witness may not give an opinion as to whether the victim is telling the truth." (Punctuation and footnotes omitted.) *Stillwell v. State*, 294 Ga. App. 805, 806-807 (2) (a) (670 SE2d 452) (2008). Improper bolstering occurs when a witness gives an opinion as to whether another witness is telling the truth. *Chauncy v. State*, 283 Ga. App. 217, 220 (3) (641 SE2d 229) (2007).

The trial court recognized the State's witness as an expert in the dynamics of child sexual abuse disclosure. When asked if she would expect a child to express love for someone who had abused her, the witness began to describe the dynamics involved in such a relationship, and trial counsel objected on the ground that the witness was trying to bolster the children's testimony. The trial court sustained the objection, cautioned the jury regarding the expert witness's limited role, and reminded the jurors that they were to determine the significance of the videotaped evidence. Trial counsel also objected to the expert's testimony that the children's behavior was consistent with that of children who had been abused. As O'Neal concedes, the expert never expressly stated that she believed the victim had been abused, and although he further argues that the expert's testimony was subject to that interpretation, the testimony O'Neal cites does not address the ultimate issue before the jury or bolster the child's credibility. See *Stillwell v. State*, supra, 294 Ga. App. at 807 (2) (a); *Osborne v. State*, 291 Ga. App. 711, 714 (3) (662 SE2d 792) (2008); *Anthony v. State*, 282 Ga. App. 457, 459 (2) (638 SE2d 877) (2006). Accordingly, O'Neal has not established that his trial counsel was ineffective for failing to object to the child therapist's testimony.

3. O'Neal argues that the trial court erred in ruling the State could compel O'Neal's wife to testify although she was not a witness to the specific act charged. OCGA § 24-9-23 (a) provides that a spouse is competent but not compellable to give testimony against her spouse, but subsection (b) provides that the privilege does not apply if the spouse "is charged with a crime against the person of a minor child." The statute further provides that the witness spouse "shall be compellable to give evidence only on the specific act for which the defendant is charged." Id.

O'Neal argues that his wife was never a witness to the "specific acts" for which he was charged, and thus should have been advised of her marital privilege and should not have been compelled to testify. Pretermitting whether O'Neal or his wife waived the issue by failing to object properly, the statute does not provide that the spouse can be compelled to testify only if she *observed* the specific act charged. It provides that the spouse can be compelled to present evidence "*on* the specific act" charged. While our appellate courts have not addressed this issue directly, this court has said in dicta that photographs of a defendant's wife "in various states of undress"

could be marital communications, which were relevant and admissible in a child molestation case to show bent of mind. *Pike v. State*, 299 Ga. App. 285, 286 (1) (682 SE2d 373) (2009). In this case, the wife testified that she did not know O'Neal had been applying ointment to the victim. This evidence is sufficiently relevant to the molestation acts charged against O'Neal so that the wife's testimony was compellable under OCGA § 24-9-23 (b).

4. O'Neal contends the trial court erred in sentencing him to more than two years of supervised probation. OCGA § 17-10-1 (a) (2) provides: "Probation supervision shall terminate in all cases no later than two years from the commencement of probation supervision unless specially extended or reinstated by the sentencing court upon notice and hearing and for good cause shown." OCGA § 42-8-34.1 (g) provides: "In no event shall an offender be supervised on probation for more than a total of two years for any one offense or series of offenses arising out of the same transaction, whether before or after confinement, except as provided by" OCGA § 17-10-1 (a) (2).

The only case to address this provision of the statute was issued in 1993, shortly after it was enacted. In holding the new law did not apply retroactively to terminate sentences for longer than two years of supervised probation, we noted that the statute "severely limits the executive's and judiciary's right and power to punish or supervise convicted criminals, and requires the State, at additional trouble and expense, to show 'good cause' to fulfill the lawful sentence." *Dept. of Corrections v. Hicks*, 209 Ga. App. 154 (433 SE2d 64) (1993).

Here, O'Neal's sentence to an extended period of supervised probation was pronounced after notice and hearing and for good cause shown, as required by the statute. As to notice, O'Neal agreed to go forward with the sentencing hearing immediately after the verdict and during the hearing he presented witnesses, his own testimony, and argument. As to "good cause shown," the State asked the trial court to require that O'Neal's sentence be served "with special conditions for sexual offenders we routinely refer to as addendum B, that he have no further contact with these children once he is released from custody." Addendum B includes the requirement that the defendant be supervised for the entire period of his probation "to protect children." Thus, the "good cause shown" was to protect children. Accordingly, we find no error in the trial court's sentence.

*Judgment affirmed. Blackburn and Bernes, JJ., concur.*

DECIDED JUNE 22, 2010 — ▮▮▮▮

*Pate & Brody, Bernard S. Brody*, for appellant.

*Patrick H. Head, District Attorney, John R. Edwards, Assistant District Attorney*, for appellee.