A11A0167. WESTBROOKS v. THE STATE.
(710 SE2d 594)

DILLARD, Judge.

Following a jury trial, Donald Westbrooks was convicted on one count of aggravated child molestation and three counts of child molestation. Westbrooks appeals his convictions and the denial of his motion for new trial, arguing that the evidence is insufficient to support his convictions and that the trial court erred in allowing one of the State's witnesses to improperly bolster the victim's credibility. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence shows that in March 2006, five-year-old S. W. came to live with her step-aunt and step-uncle after having previously lived with her father and Westbrooks, her uncle, at Westbrooks's home for several months. About one month later, S. W. was watching her step-uncle cook hotdogs when she told him—after being asked whether she liked hotdogs—that she liked hotdogs but did not like "Uncle Donald's hotdog." When her step-uncle asked her to explain, S. W. told him that she was referring to Westbrooks's privates and that he had touched her with them and had made her put her mouth on them. Alarmed by her disclosure, S. W.'s step-aunt and step-uncle reported it to the police and took S. W. to a children's hospital to meet

---

[1] *See, e.g., Goolsby v. State*, 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

with a forensic interviewer at the hospital's child advocacy center.

Over the course of the next few months, S. W. met several times with a second forensic interviewer at a child advocacy center that was closer to her home. During those interviews, S. W. disclosed that while she and her father were living at Westbrooks's home, Westbrooks pulled her pants down and touched her privates with his privates, touched her privates with his hand on at least two occasions, and made her put her mouth on his privates. S. W. also told this same interviewer, as well as her step-uncle, that Westbrooks made her watch movies that depicted men and women having sexual intercourse and instructed her not to tell anyone.

Thereafter, Westbrooks was arrested and indicted on one count of aggravated child molestation and three counts of child molestation of S. W.[2] During his trial, S. W. testified that she and her father lived at Westbrooks's home and that she had even slept in the same bed with Westbrooks while she lived there. She further testified that Westbrooks had touched her in a way that she did not like, but did not provide any details about the alleged sexual abuse. Nevertheless, S. W.'s step-uncle and the second forensic interviewer testified regarding S. W.'s detailed disclosures that Westbrooks sexually molested her. At the trial's conclusion, the jury found Westbrooks guilty on the four counts pertaining to S. W. Thereafter, Westbrooks filed a motion for new trial, which the trial court denied. This appeal follows.

1. Westbrooks contends that the evidence is insufficient to support his convictions of aggravated child molestation and child molestation, arguing generally that S. W.'s accounts of the abuse were inconsistent and lacked credibility. This contention is without merit.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[3] We do not weigh the evidence or determine witness credibility "but only determine whether a rational trier of fact could have found the defendant[ ] guilty of the charged offenses beyond a reasonable doubt."[4] Accordingly, the jury's verdict will be upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact

---

[2] In the same indictment, Westbrooks was also charged with one count of aggravated child molestation and one count of child molestation of his former girlfriend's young son, but he was acquitted of these charges by the same jury that convicted him of sexually abusing S. W.

[3] *See, e.g., English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[4] *Lott v. State*, 303 Ga. App. 775, 775-76 (1) (694 SE2d 698) (2010) (citing *Jackson*, 443 U. S. at 319 (III) (B)).

necessary to make out the State's case."[5]

A person commits child molestation by doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[6] A person commits aggravated child molestation "when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."[7] Finally, a person commits the crime of sodomy "when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another."[8]

In this case, S. W. testified at trial that Westbrooks touched her in a way that she did not like, but she did not provide any details about those incidents. However, S. W.'s step-uncle and one of the forensic interviewers proffered evidence that Westbrooks sexually molested S. W., pursuant to the Child Hearsay Act, which provides that

> [a] statement made by a child under the age of 14 years describing any act of sexual contact . . . performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[9]

Specifically, both S. W.'s step-uncle and the forensic interviewer testified that S. W. disclosed that Westbrooks touched her privates with his hand and his own privates and forced her to place her mouth on his privates. Thus, there is competent evidence to support Westbrooks's convictions of aggravated child molestation and child molestation.[10]

Nevertheless, Westbrooks argues that S. W.'s reticence to provide any details of the sexual abuse during trial and inconsistencies in some of her out-of-court disclosures rendered the evidence against him insufficient. But "[c]onflicts between the victim's testimony at trial and the victim's out-of-court statements were for the jury to

---

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citation and punctuation omitted).

[6] Ga. L. 1997, p. 1578, § 1 (current version OCGA § 16-6-4 (a) (1) (2009)).

[7] Ga. L. 1997, p. 1578, § 1 (current version OCGA § 16-6-4 (c) (2009)).

[8] Ga. L. 2000, p. 1346, § 1 (current version OCGA § 16-6-2 (a) (2006)).

[9] OCGA § 24-3-16.

[10] *See, e.g., Bright v. State*, 301 Ga. App. 204, 205 (1) (687 SE2d 208) (2009); *Herring v. State*, 288 Ga. App. 169, 170 (1) (653 SE2d 494) (2007).

resolve."[11] Indeed, "[i]f a child, who has reported child molestation to an adult permitted to testify to the out-of-court statement at trial, is incapable of reiterating the accusation at trial or is unresponsive or evasive during cross-examination, the jury must decide the child's credibility."[12] Here, the jury obviously resolved any credibility or inconsistency issues against Westbrooks.[13] Accordingly, Westbrooks's challenge to the sufficiency of the evidence supporting his convictions lacks merit.

2. Westbrooks also contends that the trial court erred in allowing one of the forensic interviewers, who met with S. W., to proffer irrelevant evidence that improperly bolstered S. W.'s credibility. We disagree.

In Georgia "the credibility of a witness is to be determined by the jury, and the credibility of a victim may not be bolstered by the testimony of another witness."[14] And "[i]mproper bolstering occurs when a witness gives an opinion as to whether another witness is telling the truth."[15]

In this case, during the State's direct examination of the first forensic interviewer, who met with S. W. shortly after she disclosed the sexual abuse to her step-uncle, the following colloquy occurred:

Q. Okay. And was [S. W.] reluctant to talk to you?
A. She would waver back and forth between being friendly and talking about stuff and then kind of shutting down and not wanting to talk about things.
Q. Okay. And is that normal?
A. Yes.
Q. Okay. Why is that normal?

But before the interviewer could answer, Westbrooks's counsel objected, arguing that the testimony was irrelevant and thus, impliedly, bolstering—which the trial court overruled. The State's prosecutor then asked the interviewer if S. W.'s reticence to talk about these issues was normal, and the interviewer responded:

Yes, it is. They're — just met somebody they've never met before and now you're talking about all this stuff. Kids tend

---

[11] *Newton v. State*, 296 Ga. App. 332, 335 (1) (a) (674 SE2d 379) (2009) (citation omitted); *see also Amerson v. State*, 268 Ga. App. 855, 855 (1) (602 SE2d 857) (2004) (same).

[12] *Amerson*, 268 Ga. App. at 855 (1) (citation omitted).

[13] *See Bright*, 301 Ga. App. at 206 (1) (affirming defendant's child molestation conviction despite alleged inconsistencies and questions about victim's credibility).

[14] *Stillwell v. State*, 294 Ga. App. 805, 806-07 (2) (a) (670 SE2d 452) (2008) (punctuation and footnote omitted).

[15] *O'Neal v. State*, 304 Ga. App. 548, 553 (2) (b) (696 SE2d 490) (2010) (citation omitted).

to think they cause things. They tend to think they'll be in trouble if they talk about things. There's all kinds of reasons that children tell or don't tell. Most — Most of the time when things happen with children, a lot of times they don't tell because some of those reasons: they're afraid; they're afraid of what's going to happen; they're afraid of what it means; they don't understand about it; they're just confused about things.

Later during the direct examination, the interviewer began to explain why it was normal for children not to provide full disclosure during a forensic interview when Westbrooks's counsel objected on the ground that the interviewer had not been tendered as an expert. At the State's request, the trial court allowed the interviewer to testify as an expert "in the areas of forensic interview and interview of children."[16] Subsequently the interviewer continued her explanation, responding:

Well, a lot of times children don't initially tell because of all the — the things that I said earlier. They are confused or afraid of [sic] they're told not to tell or they think they did something wrong. When kids do tell, they tend to tell a little bit and then stop and maybe tell a little bit more. Frequently, kids will tell you so much and then they're just not going to go any further. . . .

Contrary to Westbrooks's contention, the first forensic interviewer's testimony was relevant and did not directly address S. W.'s credibility or express a direct opinion that S. W. had been sexually abused. Moreover, "the fact that such testimony may also indirectly, though necessarily, involve the child's credibility does not render it inadmissible."[17] As such, the forensic interviewer's testimony did not improperly bolster S. W.'s credibility or address the ultimate issue before the jury. Accordingly, the trial court did not abuse its discretion in admitting the testimony over Westbrooks's objection.[18]

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

---

[16] Despite his initial objection, on appeal, Westbrooks does not challenge the forensic interviewer's qualifications to testify as an expert.

[17] *Mullis v. State*, 292 Ga. App. 218, 220 (3) (b) (664 SE2d 271) (2008) (citation and punctuation omitted); *see Howell v. State*, 278 Ga. App. 634, 643 (8) (629 SE2d 398) (2006) (same); *Odom v. State*, 243 Ga. App. 227, 229 (1) (a) (531 SE2d 207) (2000) (same).

[18] *See O'Neal*, 304 Ga. App. at 553 (2) (b) (holding that expert's testimony about the dynamics of child sexual abuse disclosure was not improper bolstering); *Pearce v. State*, 300 Ga. App. 777, 785 (6) (686 SE2d 392) (2009) (holding that a nurse practitioner's general testimony about behavior associated with child sexual abuse accomodation syndrome, including secrecy, fear, and confusion, did not constitute improper bolstering); *Osborne v. State*, 291 Ga. App. 711,

DECIDED APRIL 21, 2011.

*Kathleen J. Anderson*, for appellant.
*J. Bradley Smith, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.

---

714 (3) (662 SE2d 792) (2008) (holding that forensic interviewer could properly testify that child's "singsong manner of responding" to interviewer's questions was not consistent with child being coached).