**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 31, 2019**

# In the Court of Appeals of Georgia

A19A1480. WARD v. THE STATE.

GOBEIL, Judge.

Following a jury trial, Kristin Matthew Ward was convicted of child molestation and enticing a child for indecent purposes ("child enticement").[1] The trial court denied Ward's motion for new trial, as twice amended, for the conviction of these offenses. On appeal, Ward contends that (1) the trial evidence failed to prove venue for the child enticement offense; (2) his trial counsel rendered ineffective assistance by failing to object to testimony that impermissibly bolstered the victim's credibility and invaded the province of the jury; and (3) his trial counsel rendered

---

[1] Ward was also convicted of three counts of violation of oath by public officer. But the trial court granted Ward's amended motion for new trial and vacated the convictions for these offenses based on the expiration of the applicable statute of limitation.

ineffective assistance by failing to object to the State's possession and use of his compelled statements pursuant to *Garrity v. New Jersey*, 385 U. S. 493, 500 (87 SCt 616, 17 LE2d 562) (1967). For the reasons set forth below, we discern no merit in Ward's contention that the State failed to prove venue and his claims of improper bolstering. But we must remand this case to the trial court for an evidentiary hearing and the entry of an order with factual findings and conclusions to address Ward's alleged *Garrity* violation.

Viewed in the light most favorable to the verdict,[2] the trial evidence shows that in 2010, the male victim, G. W., and his twin brother joined the Civil Air Patrol ("CAP") when they were 12 or 13 years old and in middle school. They attended weekly meetings in CAP, where they learned about airplanes, drills, physical training, and proper dress. While at CAP, G. W. and his brother met Ward, who held a supervisory position in the program. Ward also was a law enforcement officer with the Athens-Clarke County Police Department.

Ward became close friends with G. W. and his family, and Ward began to spend time with G. W. and his brother outside of CAP activities. G. W. described that he and Ward had a mentor-mentee relationship in the beginning, and later, their

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

relationship developed into "an older brother-younger brother kind of a dynamic." Sometimes, G. W. and his brother spent time with Ward at Ward's apartment two or three times per week. Ward would take the boys to lunch or dinner, take them on hikes at a park near his apartment, and take them to his apartment, where they would watch movies and play video games. Ward also bought the boys gifts. In addition, Ward accompanied the boys on two vacations to Savannah, Georgia and San Francisco, California.

Ward would drive G. W. and his brother from their outings to Ward's apartment. On several occasions, G. W. and his brother would spend the night with Ward at Ward's apartment. While watching television in Ward's living room, G. W.'s brother typically would sit on the floor in front of the television, while Ward and G. W. would sit together on the sofa approximately six feet behind G. W.'s brother. Most of the time, it was dark in the living room and the lights were off.

G. W. testified that Ward molested him almost every time that he went to Ward's apartment. Specifically, G. W. stated that during several incidents while he was sitting on Ward's living room sofa, Ward rubbed G. W.'s penis both on top of and underneath G. W.'s clothes. Ward described that during each incident, Ward pulled G. W.'s clothes down to his knees and rubbed G. W.'s penis until G. W.

3

ejaculated. G. W.'s brother testified that although he was unable to see exactly what Ward and G. W. were doing, he would see Ward and G. W. "fidget[ing] around" on the sofa on a couple of occasions. Ward placed a blanket or pillow over himself and G. W. to shield the molestation activities from G. W.'s brother's view.

G. W. stated that he felt terrible about the molestation. At some point, G. W. decided that he no longer wanted to be around Ward. G. W. stopped attending CAP events and stopped communicating with Ward. G. W.'s brother noticed tension between G. W. and Ward. When Ward was present, G. W. did not talk as much and stayed away from Ward. G. W. became depressed and isolated himself.

When G. W. was 15 or 16 years old and in the tenth grade, G. W. first told his best friend about the molestation incidents. Thereafter, G. W.'s brother invited Ward to attend their 18th birthday party, which made G. W. feel uncomfortable. Shortly before the birthday party, G. W. disclosed the molestation incidents to his parents, and Ward's invitation to the party was rescinded.

After G. W.'s disclosure to his parents, G. W. underwent psychological counseling and the molestation incidents were reported to police. A GBI agent was assigned to investigate the allegations. An Internal Affairs investigation of the

4

molestation allegations simultaneously was being conducted by the Athens-Clarke County Police Department.

G. W. participated in a recorded forensic interview, during which he described the molestation incidents. Following the GBI investigation, Ward was charged with the child molestation and child enticement sexual offenses.[3] And after a trial, an Athens-Clarke County jury found Ward guilty of those offenses.

1. In his first enumeration of error, Ward contends that the trial evidence failed to prove venue for the offense of enticing a child for indecent purposes.

> Venue is a jurisdictional fact that the State must prove beyond a reasonable doubt and can do so by direct or circumstantial evidence. Determining whether venue has been established is an issue soundly

---

[3] Ward was charged with multiple offenses in two separate indictments. In the first indictment, Ward was charged with aggravated sexual battery, child molestation, child enticement, and violation of oath by public officer based on his acts against G. W., which is the subject of this case. In the second indictment, Ward was charged with child molestation, attempted child molestation, and two counts of violation of oath by public officer based on his alleged acts against a different victim, T. H. The indictments were joined for purposes of trial. Under the first indictment, the jury acquitted Ward of the aggravated sexual battery offense, but found Ward guilty of the child molestation, child enticement, and violation of oath offenses. Under the second indictment, the jury acquitted Ward of the child molestation and attempted child molestation offenses, but found Ward guilty of the two violation of oath offenses. The trial court vacated the violation of oath convictions under both indictments based on the expiration of the applicable statute of limitations. As such, only the child molestation and child enticement convictions remain for resolution in this appeal.

within the province of the jury. When examining whether the State has carried its burden, we view the evidence in the light most favorable to the verdict and must sustain the verdict if the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.

*Hernandez v. State*, 304 Ga. 895, 898 (2) (823 SE2d 272) (2019) (citations and punctuation omitted).

The child enticement offense occurs when a person "solicits, entices or *takes*"a child under 16 years of age to any place for the purpose of child molestation or indecent acts. OCGA § 16-6-5 (a) (emphasis supplied). Where "there is ample evidence of defendant's *taking* the victim in his motor vehicle to a place for the purpose of indecent acts[,] it is immaterial whether there is also evidence of defendant's enticing, inviting, or persuading the victim to go with him."*Dennis v. State*, 158 Ga. App. 142, 142 (2) (279 SE2d 275) (1981) (emphasis in original). The offense also requires asportation, which is established when the evidence shows only slight or minimal movement of the child. *Tudor v. State*, 320 Ga. App. 487, 491 (2) (740 SE2d 231) (2013).

In this case, the indictment alleged that Ward committed the offense by taking G. W., who was under 16 years of age at the time, to Ward's apartment for the

6

purpose of molesting and performing indecent acts upon G. W. The GBI agent testified that the offenses occurred in Athens-Clarke County. The trial evidence further showed that during the commission of the child enticement offense, Ward drove G. W. to Ward's apartment located in Athens-Clarke County. This evidence was sufficient to establish venue as alleged in the indictment. See *Harris v. State*, 333 Ga. App. 118, 120-121 (1) (b) (775 SE2d 602) (2015) (evidence showing that defendant moved the victim to defendant's house in Clayton County was sufficient to establish venue for the enticement offense under OCGA § 16-6-5 (a), as alleged in the indictment).

Ward nevertheless relies upon *Cornelius v. State*, 213 Ga. App. 766, 768 (1) (445 SE2d 800) (1994), for the proposition that "venue for the prosecution of enticing a child for immoral purposes lies in the county where the child was first enticed." Although Ward contends that G. W. was first enticed or taken from G. W.'s residence in Oconee County, the evidence does not demand such a conclusion.[4] Rather, the evidence shows that Ward took G. W. to Ward's apartment where the molestation acts

---

[4] Ward's argument in this regard relies upon the State's closing argument that Ward took G. W. from G. W.'s home to Ward's home. But generally, the State's "[c]losing argument is not evidence to be considered by the factfinder." *Stroud v. State*, 286 Ga. App. 124, 128 (3) (648 SE2d 476) (2007) (footnote omitted). To resolve this contention of error, we review all of the evidence admitted at trial.

7

occurred on many occasions. The trial evidence showed that G. W. went to Ward's apartment two or three times each month, and sometimes two or three times per week. The evidence also indicated that Ward drove G. W. to Ward's apartment from locations other than G. W.'s home.[5] The child enticement crime is complete when the child is taken with the requisite intent. *Adams v. State*, 312 Ga. App. 570, 578 (3) (b) (718 SE2d 899) (2011). Based on the trial evidence, the jury was authorized to find that the requisite asportation with intent occurred when Ward took G. W. from a park that they visited in Athens-Clarke County to Ward's apartment. Alternatively, the jury was authorized to find that the requisite asportation with intent occurred in Ward's vehicle while in transit to Ward's apartment. When a crime occurs in transit, the crime shall be considered as having been committed in any county through which the vehicle has traveled. See OCGA § 17-2-2 (e); *Aldridge v. State*, 310 Ga. App. 502, 504 (1) (a) (713 SE2d 682) (2011) (applying OCGA § 17-2-2 (e) to establish venue when defendant transported the victim in a vehicle during the commission of the crime). Similarly, if a crime occurs in more than one county and it cannot be

---

[5] G. W. and his brother testified that before going to Ward's apartment, they would go out to eat for lunch or dinner. For example, there were occasions when Ward, G. W. and G. W.'s brother went from a fast food restaurant to Ward's apartment. There were other occasions when Ward, G. W., and G. W.'s brother would visit a park in Athens-Clarke County before going to Ward's nearby apartment.

8

determined in what county a crime was committed, "it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." OCGA § 17-2-2 (h). Cf. *Epps v. State*, 297 Ga. App. 66, 69-70 (1) (676 SE2d 791) (2009) (applying OCGA § 17-2-2 (e) and (h) to establish venue when the precise moment when the victim was transported by vehicle and the exact moment when the victim's abduction satisfied the asportation requirement could not be determined with certainty). Contrary to Ward's arguments, the trial evidence sufficiently established venue in Athens-Clarke County. See OCGA § 17-2-2 (e); *Harris*, 333 Ga. App. at 120-121 (1) (b).

2. Ward also contends that trial counsel rendered ineffective assistance by failing to object to testimony that improperly bolstered the victim's credibility and improperly invaded the province of the jury.

> To prevail on his claim of ineffective assistance of trial counsel, [Ward] must show both that his counsel's performance was deficient and that the deficient performance so prejudiced him that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different. In reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo.

9

. . .

> It is well established that a witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury.

*Gilmer v. State*, 339 Ga. App. 593, 594-595 (2) (a) (794 SE2d 653) (2016) (citations and punctuation omitted). Applying these standards, we address Ward's contentions.

(a) Ward asserts that G. W.'s mental health counselor erroneously was allowed to testify that in his expert opinion, G. W. was the victim of sexual abuse. Ward's assertion mischaracterizes the counselor's testimony.

In context, the counselor's testimony described the common symptoms of abuse. The counselor testified that it was not his job to diagnose G. W. The counselor explained that in her expert opinion, G. W. displayed common symptoms of abuse, including depression, isolation, lack of confidence, and discomfort in discussing the issue of abuse. The counselor's testimony in this regard did not constitute improper bolstering.

As this Court has previously explained:

What is forbidden is expert opinion testimony that directly addresses the credibility of the victim, i.e., "I believe the victim; I think the victim is

10

telling the truth," or expert opinion testimony that implicitly goes to the ultimate issue to be decided by the jury, when such issue is not beyond the ken of the average juror, i.e., "In my opinion, the victim was sexually abused." Although the distinction may seem fine to a layman, there is a world of legal difference between expert testimony that "in my opinion, the victim's psychological exam was consistent with sexual abuse," and expert testimony that "in my opinion, the victim was sexually abused." In the first situation, the expert leaves the ultimate issue/conclusion for the jury to decide; in the second, the weight of the expert is put behind a factual conclusion which invades the province of the jury by providing a direct answer to the ultimate issue: was the victim sexually abused?

*Morris v. State*, 268 Ga. App. 325, 327-328 (2) (601 SE2d 804) (2004) (citation omitted). The testimony that G. W.'s demeanor was consistent with common symptoms of abuse was not impermissible. See id. at 328 (2) ("[T]estimony regarding the victim's demeanor did not express an impermissible opinion on an ultimate issue of whether the victim was sexually abused."); *Odom v. State*, 243 Ga. App. 229-230 (1) (b), (c) (531 SE2d 207) (2000) (witness testimony that a victim's behavior was consistent with allegations of sexual abuse does not constitute impermissible bolstering).

(b) Next, Ward argues that an objection should have been made to the forensic interviewer's testimony that in her expert opinion, there were no signs of coaching

11

or that G. W. was trying to make things up, that G. W. was abused repeatedly, and that G. W. did not want Ward to attend his birthday party due to the abuse. Again, we discern no error.

The forensic interviewer's testimony opining that G. W. showed no signs of coaching was permissible and did not constitute improper bolstering of G. W.'s credibility. "[T]his Court has repeatedly held that a witness does not improperly bolster a victim's credibility by testifying that the witness saw no evidence of coaching." *Conley v. State*, 329 Ga. App. 96, 102 (3) (a) (763 SE2d 881) (2014).

Ward otherwise mischaracterizes the forensic interviewer's testimony. The forensic interviewer did not express an opinion that G. W. had been abused repeatedly or vouch for G. W.'s credibility in referring to his disclosures during the forensic interviews. Instead, the forensic interviewer's testimony explained her observations during G. W.'s interview in the context of providing explanations for how the brain processes information; the manner in which victims recall or have difficulties in recalling details; the process of grooming a victim and his family; the disclosure process; and the differences in episodic memory versus script memory with regard to alleged incidents occurring routinely. This testimony did not impermissibly bolster G. W.'s credibility. An expert may testify "as to her observations of the victim

12

and to her conclusion, based on those observations, that the victim's description of the molestation did not appear to be coached." *Thomas v. State*, 318 Ga. App. 849, 855 (4) (b) (734 SE2d 823) (2012). "[T]he fact that such testimony may also indirectly, though necessarily, involve the child's credibility does not render it inadmissible." *Westbrooks v. State*, 309 Ga. App. 398, 402 (2) (710 SE2d 594) (2011) (punctuation and footnote omitted). And an expert's testimony about the dynamics of child sexual abuse disclosure does not constitute improper bolstering. *O'Neal v. State*, 304 Ga. App. 548, 553 (2) (b) (696 SE2d 490) (2010).

Moreover, at the motion for new trial hearing, trial counsel testified that it was his strategy to expose the forensic interviewer's bias and impartiality, in lieu of objecting to this testimony. Generally,"[t]he decision of whether to interpose certain objections is a matter of trial strategy and tactics." *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008) (punctuation and footnote omitted). "There is a strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." *Gilmer*, 339 Ga. App. at 595 (2) (a) (citation and punctuation omitted). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." *Gray*,

13

291 Ga. App. at 579 (2) (citation, punctuation and footnote omitted). Trial counsel's strategy to expose the forensic interviewer's bias in lieu of an objection was not patently unreasonable. See id. (holding that trial counsel's strategy to withhold an objection to a witness's bolstering testimony, and to point out inconsistencies in the testimony instead, was not patently unreasonable)

(c) Ward further argues that trial counsel erred in eliciting testimony during the cross-examination of the CAP cadet commander, who testified that he initially defended Ward and did not believe the molestation allegations, but changed his opinion and no longer believed Ward because he knew the victims to be good, truthful people. At the motion for new trial hearing, trial counsel explained that he made a strategic decision to withhold an objection to the CAP cadet commander's testimony and instead to highlight his changing opinions. Trial counsel also testified that generally, his trial strategy is not to object to testimony given in response to his own questions on cross-examination.

"The scope of cross examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." *Damerow v. State*, 310 Ga. App. 530, 538 (4) (a) (ii) (714 SE2d 82) (2011) (citation and punctuation omitted). Trial counsel's decision to exploit the inconsistencies in the witness's testimony, in

14

lieu of objecting to the witness's response on cross-examination, was not patently unreasonable. See *Terry v. State*, 284 Ga. 119, 122 (2) (d) (663 SE2d 704) (2008) ("It is reasonable strategy for defense counsel to place disagreeable information before the jury in a manner he can control rather than allow the subject matter to be presented in a more damaging fashion."); *Colon v. State*, 275 Ga. App. 73, 82 (9) (619 SE2d 773) (2005) (trial counsel's cross-examination of a witness, which elicited improper bolstering testimony that the witness believed the victims, was the result of a valid trial strategy to demonstrate inconsistencies in the testimony and did not amount to ineffective assistance of counsel). As such, Ward's ineffective assistance of counsel claim fails.

3. Lastly, Ward contends that trial counsel rendered ineffective assistance by failing to object to the State's possession and derivative use of Ward's compelled/immunized statement pursuant to *Garrity*, 385 U. S. at 500 and *Kastigar v. United States*, 406 U. S. 441, 453 (II) (92 SCt 1653, 32 LE2d 212) (1972). As Ward acknowledges, trial counsel filed a pretrial motion seeking to exclude from trial all evidence regarding the Internal Affairs investigation. The trial court then excluded Ward's compelled statements made during the Internal Affairs interview. Nevertheless, Ward argues that trial counsel was deficient in failing to object to the

15

State's possession of the Internal Affairs file, which allowed the State to have derivative use of his compelled statements during its trial preparations. Ward further argues that the trial court could not have properly found that counsel's error did not affect the result of the trial without conducting a proper hearing under *Kastigar* and requiring the State to discharge its burden to prove all the evidence introduced at trial was derived from legitimate sources, wholly independent of the compelled statements. As fully explained below, we agree that a *Kastigar* evidentiary hearing is needed. Because the current record contains insufficient information to address the merits of Ward's claim, we must vacate the trial court's order and remand this case for the conduct of a *Kastigar* hearing and application of the *Kastigar* standard.

As explained in *Garrity*, 385 U. S. at 496-498, when a defendant is faced with a choice between self-incrimination or job forfeiture, his statements are deemed to be coerced. "[P]olicemen . . .are not relegated to a watered-down version of constitutional rights." *Garrity*, 385 U. S. at 500. *Garrity* establishes that the protection against coerced confessions under the Fourteenth Amendment prohibits the use in subsequent criminal proceedings of confessions obtained from policemen under a threat of removal from office. Id. Here, it is undisputed that Ward's statements during the Internal Affairs investigation constitute compelled, immunized

16

statements subject to the constitutional protections of the Fifth and Fourteenth Amendments.[6]

In *Kastigar*, 406 U.S. at 453 (III), the United States Supreme Court ruled that under the Fifth Amendment privilege against self-incrimination, the use in any criminal case of compelled testimony or other information "(or any information directly or indirectly derived from such testimony or other information)" is prohibited. *Kastigar* explains that

> [the Fifth Amendment's] sole concern is to afford protection against being forced to give testimony leading to the infliction of penalties affixed to criminal acts. Immunity from the use of compelled testimony, *as well as evidence derived directly and indirectly therefrom*, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony *in any respect*, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness.

---

[6] An Internal Affairs investigation of the molestation allegations was conducted by the Athens-Clarke County Police Department. Although the records from the Internal Affairs investigation were not admitted at trial, the trial court granted Ward's motion to include them in the appellate record. The records include an "Administrative Investigation Advisement of Rights" that was executed by Ward. That document set forth Ward's rights during the Internal Affairs investigation, and pertinently advised that if Ward refused to answer questions he would "be subject to disciplinary action up to and including dismissal."

Id. (punctuation and footnote omitted; emphasis supplied). Moreover, as recognized in *Ullmann v. United States*, 350 U. S. 422, 437 (76 SCt 497, 100 LE 511) (1956), constitutional protections not only forbid the use of the compelled testimony in future prosecutions, but also "protect a witness from future prosecution based on knowledge and sources of information obtained from the compelled testimony." In other words, both direct use and derivative use of the compelled testimony and evidence is forbidden under the Fifth Amendment privilege. *Kastigar*, 406 U. S. at 453-459 (III). See also *United States v. Hubbell*, 530 U. S. 27, 37 (II) (120 SCt 2037, 147 LE2d 24) (2000) ("It has . . . long been settled that the Fifth Amendment's protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence.").

The Georgia Supreme Court has acknowledged the mandates of *Kastigar* and its progeny. See *Muhammad v. State*, 282 Ga. 247, 250 (3) (647 SE2d 560) (2007). In doing so, that Court held that "[t]he Self-Incrimination Clause reflects a judgment that the prosecution should not be free to build up a criminal case, in whole or in part, with the assistance of enforced disclosures by the accused." Id. (citations and punctuation omitted).

18

Here, Ward claims that his trial counsel was ineffective for failing to object to the State's derivative use of his immunized statements made during the Internal Affairs investigation pursuant to *Garrity* and *Kastigar*.

> To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 S. Ct. 2052, 80 LE2d 674) (1984), a criminal defendant bears the burden of showing that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The trial court's determination with respect to ineffective assistance of counsel will be affirmed unless its findings are clearly erroneous.

*Lengsfeld v. State*, 324 Ga. App. 775, 783-784 (3) (751 SE2d 566) (2013) (citation and punctuation omitted). Where, as here, the determination of an ineffective assistance of counsel claim involves a mixed question of law and fact, we employ two different standards of review. *State v. Shelton*, 329 Ga. App. 582, 583 (765 SE2d 732) (2014). "[W]e review de novo the trial court's decision as to any questions of law, while applying the clearly erroneous standard of review to the trial court's factual findings and credibility determinations." Id. (citation and punctuation omitted). Bearing the foregoing principles in mind, we address Ward's ineffective assistance of counsel claim.

19

A *Garrity* violation is an error of constitutional magnitude that affects a defendant's substantial rights under the Fifth and Fourteenth Amendments of the U.S. Constitution. *Garrity*, 385 U. S. at 500; *Kastigar*, 406 U.S. at 453 (III). The holdings of the U. S. Supreme Court on federal constitutional questions are binding precedents. *Smith v. State*, 260 Ga. App. 403, 403 (579 SE2d 829) (2003). Likewise, we are bound by the decisions of the Georgia Supreme Court. Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI; *Zachery v. State*, 233 Ga. App. 519, 521 (504 SE2d 466) (1998). A trial counsel may render deficient performance when he fails to object to a procedure or an evidentiary matter that affects a defendant's substantial rights under a constitutional provision as interpreted by well-established precedents from the United States Supreme Court and the Georgia Supreme Court. See, e.g., *Bass v. State*, 285 Ga. 89, 91-92 (674 SE2d 255) (2009) (holding that trial counsel rendered deficient performance by failing to object to a procedure in violation of the defendant's fundamental right to a fair trial); *Reado-Seck v. State*, 346 Ga. App. 381, 386 (816 SE2d 355) (2018) (remanding case for an evidentiary hearing to address whether trial counsel rendered ineffective assistance in light of his failure to object to testimony deemed as inadmissible under well-established precedent). The Fifth Amendment privilege against derivative use of compelled statements likewise has long been

20

established. See *Hubbell*, 530 U. S. at 37 (II); *Kastigar*, 406 U. S. at 453-459 (III); *Muhammad*, 282 Ga. at 250 (3). Consequently, it is possible that trial counsel rendered ineffective assistance by failing to object to derivative use of Ward's compelled statements. But we cannot review this issue based on the inadequate record before us. A full determination of this issue requires further proceedings to address whether a prohibited derivative use actually occurred and constituted harmful error.

The proper procedure and standard for addressing an alleged *Garrity* violation are set forth in *Kastigar*.

> Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to [a] prosecution, the [prosecuting] authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence. This burden of proof . . . is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it . . . use[d] [was] derived from a legitimate source wholly independent of the compelled testimony.

*Kastigar*, 406 U. S. at 460 (IV) (citation and punctuation omitted). Based on this standard, "the Fifth Amendment allow[s] the [State] to prosecute using evidence from legitimate independent sources." Id. at 461 (IV).

21

Here, the trial court failed to conduct an evidentiary hearing applying the *Kastigar* standard for evaluating the claim.[7] After Ward's appellate counsel raised the issue, the State did not present any testimony or evidence to show whether it derived any indirect or derivative use of Ward's compelled testimony under *Kastigar*. As a result, the motion for new trial hearing did not supplant the evidentiary hearing that

[7] To determine whether the *Kastigar* standard has been met, the trial court usually would require a pre-trial evidentiary hearing at which the prosecution must discharge its burden of proof. Cf. *State v. Stinson*, 244 Ga. App. 622, 622 (536 SE2d 293) (2000) (trial court held an evidentiary hearing on the defendant's motion to suppress to determine merits of *Garrity* and *Kastigar* claim). Because a claim under *Garrity* and *Kastigar* invokes the U. S. Constitution, federal decisions are also persuasive in examining this issue. See, e.g., *Perez v. State*, 283 Ga. 196, 198 (657 SE2d 846) (2008) (the decisions of federal courts provide persuasive authority when addressing federal constitutional claims). In *United States v. Byrd*, 765 F2d 1524, 1532 (III) (11th Cir. 1985), the federal appellate court recognized that "the *Kastigar* hearing is generally intended to be an evidentiary and adversary hearing." Where, as here, the issue was not raised until after the trial in the context of an ineffective assistance of counsel claim, an evidentiary hearing may be conducted during the post-conviction proceedings. See, e.g., *Smith v. State*, 255 Ga. 654, 656 (3) (341 SE2d 5) (1986) (remanding case to the trial court for a hearing and appropriate findings concerning the issue of ineffective assistance of counsel); *United States v. Hill*, 643 F3d 807, 879 (X) (G) (2)(11th Cir. 2011) (court ruling upon the *Kastigar* derivative use issue in the context of defendant's post-conviction motion to dismiss the conviction; remanding case for a post-trial *Kastigar* hearing based on conclusion that "a thorough evidentiary inquiry, including testimony from all of those who built and presented the case against [defendant], is necessary for the [] court to determine whether the government has carried its burden of proving that there was no derivative use" of the compelled statements); *Byrd*, 765 F2d at 1533-1534 (III) (recognizing that a *Kastigar* hearing may be had after the trial has been concluded).

22

became necessary to address the alleged violation.[8] Notably, the burden is upon the State to show the absence of taint and that the evidence was derived from legitimate, independent sources. See *Kastigar*, 406 U. S. at 460 (IV); *United States v. Hampton*, 775 F2d 1479, 1485 (11th Cir. 1985) (ruling that "the government had the burden of establishing that all of the evidence presented to the grand jury (and ultimately all of the evidence to be utilized at trial) was derived from legitimate, independent sources.") (footnote omitted). In the absence of a *Kastigar* hearing addressing the derivative use issue, the State was not afforded an opportunity to present evidence to meet its burden. And hence, the trial court was not able to determine whether a violation occurred.

Moreover, although the trial judge's order on the motion for new trial purported to address the substantive merits of the claim, it did not fully address whether the State made impermissible derivative use of Ward's compelled statements. The trial court's findings on the *Garrity* issue were limited to two evidentiary examples.[9] Significantly, the State cannot meet its burden under *Kastigar* by

---

[8] In fact, the trial judge did not have the Internal Affairs records, including Ward's compelled statements, when considering and ruling upon the *Garrity* issue.

[9] The trial court's order on the motion for new trial states that Ward pointed to two examples of how he allegedly was harmed by derivative use of the compelled

23

establishing independent sources for merely a portion of the evidence, and "neither speculation nor conclusory denials of use or derivative use by government officials will substitute for the affirmative showing of an independent source required for each and every item of evidence presented to the [jury]." See *Hampton*, 775 F2d at 1489.

When a trial court considers a claim under an improper legal standard, we must vacate the trial court's judgment and remand this case for the court to consider the claim under the proper standard. See generally *State v. Flores-Gallegos*, 337 Ga. App. 79, 82 (785 SE2d 911) (2016) (vacating judgment and remanding case for the trial court to consider a motion to suppress under the proper standard). See also *United States v. Schmidgall*, 25 F3d 1523, 1530-1531 (III) (B) (2), (C) (11th Cir. 1994) (remanding case for a *Kastigar* hearing because the record was insufficient to

statements–first, "Captain Jerry Saulters testified that he would not believe Ward if he testified under oath[,]" and second, "the prosecution team trying the case had the advantage of reviewing [Ward's] Internal Affairs interview in preparation for cross-examination of [Ward]." But at the motion for new trial hearing, Ward's appellate counsel also argued against the prosecutors' ability to call witnesses from the Internal Affairs investigation and ability to preview Ward's compelled statements about the charges. Ward likewise argues on appeal that the State had an unfair advantage in preparing the case for trial and knew of at least two additional witnesses to call at trial. Ward was not required to point to specific portions of evidence affected by the *Garrity* violation. Rather, after a *Garrity* violation was raised, the State had the burden of establishing that none of the State's trial evidence was derived directly or indirectly from Ward's compelled statements. *Kastigar*, 406 U. S. at 460 (IV); *Hampton*, 775 F.2d at 1485.

establish whether the prosecuting authority has met its burden). Accordingly, we must vacate the trial court's ruling on this issue and remand this case to the trial court to conduct a *Kastigar* evidentiary hearing to address whether the State can demonstrate by a preponderance of the evidence that it did not make derivative use of the compelled statements. Id. If there was a derivative use and tainted evidence was presented to the jury, the trial court must determine whether the use was harmless beyond a reasonable doubt. Id. at 1531 (III) (B) (2), (C).

"Where, as here, the trial judge acts as finder of fact, our duty is to make certain the proper standard was utilized by the court." *In the Interest of A.S.*, 293 Ga. App. 710, 713-714 (2) (667 SE2d 701) (2008). To further ensure that the trial court applies the proper standard in its findings and determinations upon remand, we provide additional guidance on the scope of prohibited derivative use of compelled statements, a novel issue under Georgia state law.[10]

---

[10] As part of his claim, Ward also argues that the State's mere possession of the compelled statements for use in its trial preparations constituted a prohibited derivative use. Although the proscription against derivative use of compelled statements has been acknowledged in Georgia, whether an impermissible derivative use occurs when a prosecutor possesses or has access to a defendant's compelled statements during trial preparation is an issue of first impression under Georgia jurisprudence. To the extent that Ward's arguments regarding the scope of prohibited derivative use presents a novel issue under Georgia law, trial counsel cannot be deemed ineffective for failing to object on this ground. See generally *Eller v. State*,

25

First, we recognize that there is a split in how other jurisdictions have interpreted the scope of *Kastigar's* prohibition against the derivative use of a compelled statement. Some courts have favored a broad interpretation of "use" that requires prosecuting authorities to show that there was no evidentiary, as well as non-evidentiary,[11] derivative use of compelled statements to which the prosecutor had access. See *United States v. Semkiw*, 712 F2d 891, 895 (3d Cir. 1983) (ruling that the possibility of a *Garrity* violation is heightened by the fact that the prosecutor had access to the compelled testimony, and the prosecuting authority must show that "no 'non-evidentiary' use has been or will be made of the compelled testimony") (citation and punctuation omitted); *United States v. McDaniel*, 482 F2d 305, 311-312 (8th Cir. 1973) (holding that a prosecutor's admitted act of reading the defendant's *Garrity*

---

303 Ga. 373, 383 (IV) (C) (811 SE2d 299) (2018) ("[T]rial counsel's performance cannot be deemed deficient for not raising an unsettled question of law.") (citation and punctuation omitted). We nevertheless address the proper standard to be employed for evaluating this derivative use issue, so that it may be applied when the trial court evaluates the *Garrity* and *Kastigar* claims upon remand.

[11] Non-evidentiary use "forbid[s] all prosecutorial use of the testimony, not merely that which results in the presentation of evidence before the jury." *United States v. McDaniel*, 482 F2d 305, 311 (8th Cir. 1973). Non-evidentiary use "could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy." Id.

statement prior to the indictments may have had an "immeasurable subjective effect" giving rise to a prohibited derivative use); *State v. Jackson*, 927 NE2d 574, 580 (II) (B) (2) (Ohio 2010) (holding that "the prosecutor's possession of [the defendant's] *Garrity* statement during trial preparation constituted an improper use within the meaning of *Garrity*.")

In contrast, seminal cases from other jurisdictions, including the Eleventh Circuit, provide a more restrictive interpretation of *Kastigar.* These cases hold that the constitutional privilege prohibits only direct or indirect "evidentiary" uses of a compelled statement. See *United States v. Byrd*, 765 F2d 1524, 1531 (II) (11th Cir. 1985) (declining to follow *McDaniel*, and ruling that "the privilege against self-incrimination is concerned with direct and indirect *evidentiary* uses of compelled testimony") (emphasis in original). See also *United States v. Serrano*, 870 F2d 1, 16-18 (IV) (1st Cir. 1989) (recognizing that courts have disagreed on the issue of the extent to which the Fifth Amendment's privilege against self-incrimination bars the non-evidentiary use of compelled testimony; rejecting *McDaniel's* notion that all non-evidentiary use necessarily violates the Fifth Amendment); *United States v. Mariani*, 851 F2d 595, 600-601 (II) (2d Cir. 1988) (declining to follow *McDaniel*, and instead, holding that a prosecutor's knowledge of compelled testimony does not reflect an

impermissible derivative use of that testimony, particularly when the alleged derivative uses are "wholly conjectural and insubstantial").

In *Byrd*, the Eleventh Circuit rejected the premise that a prohibited derivative use necessarily occurs when a prosecutor has read or heard the compelled testimony. Id. at 1530-1531 (II). Instead, *Byrd* adopted a view that "a violation of the privilege against self-incrimination would not occur . . . unless such [derivative] use of the [compelled] testimony resulted in the introduction of evidence not obtained wholly from independent sources." Id. at 1532 (II) (punctuation omitted). In other words, the ruling in *Byrd* provides that there is no *Garrity* violation if the evidence was obtained wholly from independent sources, rather than the compelled testimony. Id.

In *Schmidgall*, 25 F3d at 1528-1529 (III) (A), the Eleventh Circuit confirmed its adoption of the "evidentiary" interpretation of *Kastigar*, i.e., "that the focus of a challenge on self-incrimination grounds should be on the direct and indirect evidentiary uses of [compelled] testimony, rather than on non-evidentiary matters[.]" *Schmidgall* explained that "[p]rohibited indirect derivation includes using [compelled] testimony to help shape the questioning of another witness." Id. at 1528 (III) (A). Therefore, when facing allegations of a *Kastigar* violation, the State must demonstrate that its questioning of witnesses was not derived from compelled

testimony. Id. A prosecutor's denials and uncorroborated testimony that he made no use of the compelled testimony are generally insufficient to meet the State's burden of proving the absence of taint under the preponderance of the evidence standard. Id. at 1528-1529 (III) (B) (1).

Although *Kastigar's* scope presents a novel issue for this court, the Eleventh Circuit opinions provide persuasive guidance. See *Perez v. State*, 283 Ga. 196, 198 (657 SE2d 846) (2008) ("The decisions of the Eleventh Circuit are not binding on this Court, but they are persuasive authority."). We therefore adopt the Eleventh Circuit's view that to meet the *Kastigar* burden, the State must show that it did not make direct or indirect *evidentiary* use of a compelled statement, and it is unnecessary to address non-evidentiary matters. See *Schmidgall*, 25 F3d at 1528-1529 (III) (A); *Byrd*,765 F2d at 1529-1531 (II).

> If the evidence presented to the [jury] . . . at trial is not found to have been properly derived from legitimate independent sources, then . . . a new trial [must be] ordered . . . , unless the error is held harmless beyond a reasonable doubt. If the [State] sustains its burden of proof, or if use of the prohibited evidence is found to be harmless, then the convictions should be reinstated.

*United States v. Gregory*, 730 F2d 692, 698 (I) (11th Cir. 1984) (punctuation omitted). Upon remand, the trial court is instructed to conduct a *Kastigar* evidentiary hearing and determine whether a violation occurred based upon the standards of *Kastigar*, *Byrd* and *Schmidgall*, as herein adopted. The trial court then shall determine whether trial counsel was ineffective for failing to object on *Kastigar* grounds as Ward alleges.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Dillard, P. J., and Hodges, J., concur*.